876 A.2d 795 (2005)
378 N.J. Super. 521
STATE of New Jersey, Plaintiff-Respondent,
v.
Jose LOPEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 11, 2005.
Decided June 28, 2005.
*798 Yvonne Smith Segars, Public Defender, attorney for appellant (William Welaj, Designated Counsel of Counsel and on the brief).
Michael M. Rubbinaccio, Morris County Prosecutor, attorney for respondent (Joseph Connor, Jr., Assistant Prosecutor on the brief).
Before Judges NEWMAN, AXELRAD and R.B. COLEMAN.
The opinion of the court was delivered by
NEWMAN, P.J.A.D.
Defendant Jose Lopez was charged with purposeful/knowing murder, N.J.S.A. 2C:11-3a(1) and 2C:11-3a(2) (Count I); felony-murder, N.J.S.A. 2C:11-3a(3) (Count II); and robbery, N.J.S.A. 2C:15-1a (Count III).
The jury found defendant not guilty of purposeful/knowing murder, but found him guilty of the lesser-included offense of reckless manslaughter, under Count I, found him not guilty of felony-murder under Count II, and found him guilty of robbery under Count III. The trial court sentenced defendant to consecutive nine-year terms of imprisonment for reckless manslaughter and robbery with eighty-five percent parole disqualifiers on each Count. Defendant appeals. We vacate the sentence on reckless manslaughter and remand for resentencing. We reverse the robbery conviction and remand for entry of a conviction on the third-degree offense of theft from the person and sentencing on that charge.
The relevant facts may be summarized as follows. On the evening of March 16, 2002, defendant, a 5' 4", 140 pound, twenty-three year old, went to the Bassett Pub in Dover Township, where he met up with the victim, Luis Rendon, who was 5' 2", 202 pounds, and forty-three years old. Rendon bought defendant a drink and a round of drinks for the entire bar. Rendon and defendant chatted and their discussion turned to the subject of sex. Rendon offered to pay defendant for sex. Rendon suggested that they have sex by the nearby railroad tracks. Rendon then put his legs on defendant's legs and held his hand. Upset that Rendon offered to pay him for sex, defendant left the bar. Rendon followed him out and engaged defendant in further conversation. Defendant agreed to take a taxi with Rendon to another bar, the Unique Bar & Grill in Dover.
They remained at the Unique Bar drinking until it closed. Rendon again paid for their drinks and suggested they go to the railroad tracks to have sex. Defendant got angry at one point when Rendon kissed him in front of other patrons. Eventually, defendant acquiesced to Rendon and agreed to have sex with him.
When they left the bar, the pair walked towards the train tracks off Blackwell Street. Rendon unzipped his pants and again asked defendant to have sex. According to defendant, Rendon told him that he was either going to have sex voluntarily or be forced. Rendon then asked defendant to give him oral sex. Defendant got mad and the two got into a heated argument. As defendant turned to leave, Rendon grabbed him and turned him around. Defendant pushed Rendon to the *799 ground. Rendon got up and charged defendant, and they both fell to the ground wrestling. They rolled down the embankment to the nearby Rockaway River. When they got to the bottom of the embankment, the two got up and traded punches. Rendon lunged at defendant and defendant struck Rendon in the throat with a karate chop using the side of his hand.
Rendon grabbed his throat, fell face down in the water, and was flailing his arms. As Rendon struggled in the water, defendant took his wallet from his back pocket and opened it. Finding no money, defendant stole Rendon's necklace chain from around his neck. Rendon had $905 in a back pocket which was not taken. Defendant left Rendon face down flailing and gasping for air in twenty inches of water and walked home to his nearby residence.
Defendant took off his soaked clothing before entering his house. The next morning defendant put his clothing from the night before in a garbage bag and discarded it in a dumpster behind the Main Street Bar & Grill on East Blackwell Street. That morning, the Dover police received a 9-1-1 call reporting Rendon's dead body in the Rockaway River. The police found a gold hoop earring by the railroad tracks and Rendon's wallet by his body.
Rendon's autopsy revealed scrapes and bruises on his forehead, nose, lips, neck, back, hands and legs. The fatal injuries were to Rendon's throat and neck. The hyoid bone in Rendon's throat was fractured, and his Adam's apple was split. The combination of these injuries prevented Rendon from calling out for help and compromised his breathing. The cause of death was determined to be blunt trauma to the neck and immersion in water. Hypothermia may have also played a role.
Defendant became a suspect after Angela Guridy, owner of the Unique Bar, told the police that she had seen Rendon with a man fitting defendant's description on the night Rendon was killed.
On March 21, 2002, the Dover police went to defendant's place of employment, the Sparta Car Wash, to speak with him. The police noticed that he wore an earring identical to one found at the crime scene. Defendant agreed to accompany the police to the station for an interview. During the ride to Dover, Captain Peter Ugalde advised defendant of his rights in both Spanish and English. At the police station, the police again advised defendant of his rights which defendant acknowledged at 10:30 a.m.
Detective Robert Meoqui of the Prosecutor's Office interviewed defendant. He readvised defendant of his rights and defendant agreed to speak with him. Defendant also consented to a videotape interview. Defendant told the police on videotape that after they left the second bar, Rendon told him that if he did not "make love to him then he was going to make it to me. Even if I had to be dead." Defendant reiterated that Rendon had grabbed him by the neck and started punching him, eventually causing both of them to fall down the embankment into the river. Defendant admitted to delivering a blow to Rendon's neck with the edge of his hand. After Rendon fell face down into the water, defendant claimed that he tried to pull him out of the water, but Rendon was too heavy. Defendant then admitted to taking a necklace chain and Rendon's wallet while Rendon was still struggling in the water. Defendant told the police where he had discarded the clothing he wore at the time of the incident. Defendant was arrested at the end of the videotape interview.
*800 Subsequently, the police recovered from the dumpster behind the Main Street Bar & Grill defendant's clothing still soaking wet in a garbage bag. The police also searched defendant's house and found Rendon's gold chain with a medallion of the Virgin Mary in defendant's drawer. The earring found at the scene of the homicide was identified as defendant's.
On appeal, defendant raises the following issues for our consideration:

POINT I: THE TRIAL COURT'S CHARGE TO THE JURY REGARDING ROBBERY WAS MISLEADING, AMBIGUOUS AND FATALLY DEFECTIVE BY EXPANDING THE SCOPE OF ROBBERY TO INCLUDE THEFT FROM THE PERSON.

POINT II: THE TRIAL COURT'S RESPONSE TO THE JURY'S QUESTIONING DURING DELIBERATIONS REGARDING ITS APPARENT CONFUSION OVER THE EXPANDED ASPECT OF THE COURT'S ORIGINAL CHARGE REGARDING ROBBERY AND THEFT FROM THE PERSON WAS INAPPROPRIATE, NON-RESPONSIVE AND ERRONEOUS IN NATURE. (PARTIALLY RAISED BELOW)

POINT III: THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A JUDGMENT OF ACQUITTAL REGARDING COUNT III CHARGING ROBBERY.

POINT IV: THE JURY'S VERDICT REGARDING COUNT III WAS INCONSISTENT, ILLOGICAL AND THE RESULT OF COMPROMISE.

POINT V: THE NINE YEAR TERMS IMPOSED ON COUNTS I AND III ARE UNCONSTITUTIONAL SINCE THEY EXCEED THE MAXIMUM SENTENCE AUTHORIZED BY THE JURY'S VERDICT.

POINT VI: THE SENTENCE IMPOSED WAS MANIFESTLY EXCESSIVE.

I.
Defendant argues in Point I that the judge's instruction that the intent to unlawfully take property may occur subsequent to the use of force, as long as it is a continuous action, improperly expanded the scope of robbery to include theft from the person.
The robbery statute, N.J.S.A. 2C:15-1a, provides in relevant part:
A person is guilty of robbery if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another;
. . . .
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
The State requested that the judge charge the jury that the intent to commit a theft may form either before the use of force or after, as long as the theft and the use of force could be considered as constituting a single transaction. The State acknowledged that there were no New Jersey cases that interpret the robbery statute to include the concept of "afterthought" robbery, but relied on out-of-state authority. During the charge conference, the trial judge recognized that the out-of-state cases were based on state statutes that define robbery differently from New Jersey. The trial judge expressed his ruminations as follows:
Under ... Article 18, "Robbery," of the Illinois Compiled Statutes, Criminal Offenses, Criminal Code of 1961. It's cited *801 as 720 ILCS 5. And 720 ILCS 5:18-1 is "Robbery," and 18-1(a) says:
A person commits robbery when he or she takes property, except a motor vehicle covered by Section 18-3 or 18-4, from the person or presence of another by the use of force, or by threatening the imminent use of force.
Now trying to boil this down, the way I see it is that focuses on the commission of the crime. In other words, when it says "when he or she takes property."
New Jersey has a different approach here. [The trial Judge reiterates the language of N.J.S.A. 2C:15-1(a)].
Now the reason I emphasize that is it makes sense to me that the court in Illinois would come [up] with the concept of the afterthought and try to explain how that relates to a robbery, when you've got the narrower language in Illinois that "a person commits a robbery when he or she takes property."....
Here, New Jersey attempts to deal with that by saying, we're going to give you a definition of what an actwhen an act occurs in the course of committing a theft. In the course of committing a theft, it occurs in an attempt to commit a theft or in immediate flight after the attempt or commission.
So I guess what I'm saying is this. That, to start with, New Jersey's definition is broader, more encompassing. And if we get into New Jersey's definition, which of course we will get into it because that's the law of this state, I'm wondering, if I charge afterthought, what am I doing. Am I in some way going to intrude upon what the Legislature intended by the definition of a robbery. Maybe I shouldn't leave robbery, except as it is defined, not go into the afterthought at all.
The trial judge charged the jury adopting the "afterthought" concept in the following terms:
If you find that the circumstances of the alleged robbery reveal that the defendant intended to permanently deprive the owner of his property and the taking waswas accomplished in part by the prior knowing use of force by the defendant, then it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the intent to steal and the use or threat of force can be found as constituting a single transaction.
If you find that after the incident involving the alleged use of force between Luis Rendon and the defendant Jose Lopez had ended, and you find the defendant then formed the intent to permanently deprive Luis Rendon of his property and remove property from the person of Luis Rendon, then you should consider whether the defendant is guilty of the lesser included offense of theft, which I shall hereafter explain.
The defense consistently objected to the employment of an "afterthought" concept and argued that the language of the Model Jury Charge for robbery was sufficient. Defendant argued that the first paragraph of the jury charge effectively negated the second paragraph and erroneously expanded the scope of robbery.
On appeal, the State maintains that "afterthought" robbery is practical and recognizes that it is particularly offensive for an actor to steal from a person whom he or she has disabled. However, the State appears to concede that by its literal terms, N.J.S.A. 2C:15-1(a) does not cover the situation where the actor does not form the intent to steal until after he or she has forcibly disabled the victim. The State urges us to apply the theory of "constructive concurrence" as explained in Metheny *802 v. State, 359 Md. 576, 755 A.2d 1088, 1105 (2000). The theory of constructive concurrence is essentially that the intent to steal, which is formed after the use of force, is sufficient to support a robbery conviction so long as the theft and the use of force are part of a single transaction.
We decline to adopt the constructive concurrence approach. To begin with, the "afterthought" concept is not articulated in our robbery statute. Nonetheless, the State asks us to go beyond the language of the statute and the common law to adopt a legal theory developed in other states. Allen v. State, 158 Md.App. 194, 857 A.2d 101, 129 (2004); State v. McKinney, 265 Kan. 104, 961 P.2d 1, 7-8 (1998); Chappell v. State, 114 Nev. 1403, 972 P.2d 838, 841 (1998), cert. denied, 528 U.S. 853, 120 S.Ct. 318, 145 L.Ed.2d 114 (1999); State v. Belue, 127 Idaho 464, 902 P.2d 489, 491-92 (1995); State v. Mason, 403 So.2d 701, 704 (La.1981); People v. Jordan, 303 Ill. 316, 135 N.E. 729, 730 (1992); People v. Lewis, 165 Ill.2d 305, 209 Ill.Dec. 144, 651 N.E.2d 72, 88 (1995). Some states have rejected afterthought robbery. Commonwealth v. Moran, 387 Mass. 644, 442 N.E.2d 399, 401 (1982); Cooper v. State, 67 S.W.3d 221, 223 (Tex.Crim.App.2002).
Maryland, the state which utilized the constructive concurrence theory, does not have a statutory definition of "robbery," but relies on its own common law definition. See Md.Code Ann., Criminal Law, § 3-401(e) (2002). Furthermore, as noted by the trial judge, Illinois, another state on which the prosecutor relies, has a different statutory definition of robbery from this State. Our Legislature specifically created a statutory definition for robbery, which does not encompass the afterthought concept.
Our robbery statute which reads, "[a] person is guilty of robbery if, in the course of committing a theft, he ... [i]nflicts bodily injury or uses force upon another ...." is not ambiguous. (Emphasis added). The language strongly suggests that there is no robbery unless the use of force occurred during the time span that defendant was in the course of committing a theft. We refuse to create ambiguity in an otherwise unambiguous statute. Here, the State was required to prove that defendant's use of force occurred at the time of the theft or during the immediate flight therefrom.
Charging the jury as defendant argued would have been sufficient because the State's theory was that defendant was not acting in self defense, but rather he intended to attack and rob the victim all along. If the jury found this to be so, it could still have found defendant guilty of robbery in the first degree. Alternatively, had the jury found that defendant decided to rob the victim after disabling him, it could have found him guilty of the lesser included offense of theft from the person.
By giving the afterthought charge, the judge was allowing the State to argue two theories of the crime, either that defendant went to the scene of the crime that night with the intent to attack and rob the victim, or that he only intended to attack the victim, but then decided to rob him after the altercation. The only way the jury could have found defendant guilty of theft from the person under the State's hypothesis, was if the facts were such that defendant left the riverbank and returned several minutes or sometime later to rifle through the victim's pockets. In other words, under the actual facts of this case, the judge's charge effectively eliminated the lesser included offense of theft from the person. In our judgment, the robbery conviction cannot stand given the erroneous charge to the jury.

*803 II.
Defendant contends that the trial judge's jury charge on robbery confused the jury. This confusion manifested itself in the jury question as to what constituted "a single transaction." The trial court's response, that a theft was deemed to continue until the thief reached temporary safety, it is argued, was irrelevant and non-responsive to the question posed by the jury, further compounding the error of the charge itself.
Even had we interpreted N.J.S.A. 2C:15-1 to include afterthought robbery, the robbery conviction is still reversible given the trial court's response to the jury question.
In determining the propriety of a response to a jury question, the supplemental charge must be considered with the main charge in its entirety to ascertain whether the jury was misinformed as to the applicable law. See State v. Hipplewith, 33 N.J. 300, 317, 164 A.2d 481 (1960). A trial court must not only respond substantively to questions asked by the jury during deliberations, but it must assure itself that it understands the import of the questions. State v. Middleton, 299 N.J.Super. 22, 30, 690 A.2d 623 (App.Div. 1997); State v. Graham, 285 N.J.Super. 337, 342, 666 A.2d 1372 (App.Div.1995).
In supplementing the jury charge, it is not enough in every case to merely reiterate legal principles to the jury. Rather, the better practice is to mold the instructions in a manner which explains the law to the jury within the context of the particular facts of the case. State v. Gartland, 149 N.J. 456, 475, 694 A.2d 564 (1997). Accordingly, a trial court's instruction to the jury must clearly explain how the jury is to apply the legal principles to the facts of the case. State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988).
Here, the jury asked for clarification on the "afterthought" jury charge. Specifically, it asked the court how to determine whether it was a "single transaction" and how to determine when the force has ended. The jury's note asked:
[W]hen the force ends is that one transaction, is the theft another transaction? Our difficulty is on how to determine what constitutes a single transaction. Is there a time limit?
The State commented that "single transaction" had not been defined at any point for the jury, and that some type of guidance was needed in that regard. The State suggested that the court instruct the jury in accord with State v. Pantusco, 330 N.J.Super. 424, 750 A.2d 107 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000), that as long as the defendant had not reached a temporary point of safety, the conduct had to be considered in the course of committing a theft. The trial court observed that the jury had to decide whether the use of force and the intent to steal were "overlapping or concurrent" and when they occurred, or whether the one ended before the other began. However, over defense counsel's vigorous objections, the trial court nonetheless gave the jury the State's proffered instruction, which only addressed how to determine when the act of the theft was complete, not how to determine whether the prior use of force was concurrent with the later theft. The trial court instructed:
The law does not provide a specific time limit for a single transaction. Under the law, in the course of committing a theft has been defined to mean that a theft continues until the actor reaches a point of at least temporary safety. The language of a single transaction is used to define a single event or single occurrence. *804 The jury is to decide whether under the facts as it finds them to be the use of force and the intent to steal are overlapping or concurrent in when they occurred, or whether one ended before the other began.
This charge not only restates what the judge already instructed the jury, but addresses a question not asked by the jury. The language "[u]nder the law, in the course of committing a theft has been defined to mean that the theft continues until the actor reaches a point of at least temporary safety" is irrelevant and confusing. The jury's inquiry focused on how to decide if the force was still ongoing when the intent to steal was formed. The jury did not ask how to determine when a theft is complete. The notion of reaching a point of "temporary safety" is only relevant to the facts of Pantusco and like cases where the force occurs during the flight from the theft. As pointed out in the Commentary to the New Jersey Penal Code, "[t]he thief's willingness to use force against those who would restrain him in flight strongly suggests that he would have employed it to effect the theft had there been need for it." (citations omitted). Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:15-1 (2003). It is irrelevant here. The language "point of temporary safety" may be the only concept that the jury understood and misled them to focus on whether defendant left the scene before stealing from the victim instead of the real issue, which was whether the intent to steal was formed prior or concurrent with the use of force.
The confusion caused by the initial instructions was exacerbated by this non-responsive and erroneous instruction. This was not a case where the force was asserted during the flight from the theft. Instructions developed for those types of cases are not applicable here merely because the force occurred separately from the theft. In our view, the trial court's "clarification" alone may be enough to have caused juror confusion and to require reversal of the robbery conviction.

III.
Defendant contends that no reasonable jury could have believed anything other than that defendant formed the intent to steal from Rendon after the altercation. Because "afterthought" robbery is not a valid concept in this State, defendant asserts that the trial court erred in not granting an acquittal on Count III.
A trial court must enter an acquittal only if, giving the State the benefit of all favorable evidence and all favorable inferences that may reasonably be drawn from that evidence, a reasonable jury could not find guilt beyond a reasonable doubt. State v. Reyes, 50 N.J. 454, 458-59, 236 A.2d 385 (1967). A reviewing court applies the same standard. State v. Moffa, 42 N.J. 258, 263, 200 A.2d 108 (1964). Defendant acknowledges that a conviction can rest upon circumstantial evidence alone. State v. Taccetta, 301 N.J.Super. 227, 240, 693 A.2d 1229 (App.Div.1997), certif. denied, 152 N.J. 187, 704 A.2d 17 (1997). Nonetheless, defendant argues that, giving the State the benefit of all favorable inferences, it still did not make a prima facie case for robbery under N.J.S.A. 2C:15-1(a).
We disagree. While the jury did ultimately determine that defendant did not formulate a plan to lure Rendon to the secluded spot and attack and rob him, which we know because they found defendant guilty of only manslaughter and not felony-murder, this does not mean that the State did not present a prima facie case for robbery. Based on circumstantial evidence, the State's proofs, if believed, showed that defendant formulated a plan *805 to rob the victim early in the evening. Defendant admired the victim's jewelry when the two men were drinking at a bar. Defendant did not readily submit to Rendon's sexual entreaties, but continued to fraternize and drink with him until they closed the bar. At that point, Rendon would have been seen as more vulnerable and less able to defend against a robbery attempt. Of course, the jury did not have to believe that the fatal blow to Rendon was struck in warding off a sexual advance, but was, rather, struck in the commission of a robbery where an unanticipated defense was put up by the victim. Furthermore, there is no question that defendant stole property belonging to Rendon.
We are satisfied that the trial judge properly denied defendant's motion for an acquittal of the robbery charge.

IV.
Defendant argues that his robbery conviction cannot stand because it was wholly inconsistent with his acquittal of the felony-murder charge. Here, the jury likely found defendant guilty of afterthought robbery which has not been recognized at this point as part of the law of this State.
Defendant acknowledges that consistency in verdicts are neither necessary nor required. Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); State v. Grey, 147 N.J. 4, 9-10, 685 A.2d 923 (1996). Likewise, inconsistent verdicts do not vitiate an otherwise reasonable verdict. See State v. Banko, 182 N.J. 44, 53, 861 A.2d 110 (2004); State v. Petties, 139 N.J. 310, 319, 654 A.2d 979 (1995). Nevertheless, where an acquittal of one count precludes the finding of an element of another offense, such inconsistency may be fatal. State v. Ortiz, 253 N.J.Super. 239, 245, 601 A.2d 735 (App.Div.), certif. denied, 130 N.J. 6, 611 A.2d 646 (1992).
The jury was instructed that to find defendant guilty of felony-murder, it must have concluded that the victim's death occurred during the commission of an attempt to commit a robbery or during the flight from the robbery. The jury found defendant not guilty of felony-murder. The jury based its conviction of robbery on the afterthought concept of robbery which is not recognized in this State. The trial court believed, and the State admits, that the jury found that the intent to rob the victim was formulated after the force had been initiated, not the other way around. Thus, the verdicts were not inconsistent so much as the robbery conviction was based on a type of robbery not found within the statutory definition for robbery under N.J.S.A. 2C:15-1.
As already concluded above, the conviction of robbery was tainted by the erroneous and confusing jury charge regarding afterthought robbery. This confusion led to inconsistent verdicts which cannot be reconciled. Therefore, the conviction on Count III cannot stand.
"A trial court may mold a verdict by entering a judgment of conviction for a lesser included offense or where the jury verdict necessarily constitutes a finding that all the elements of the lesser included offense have been established and where no prejudice to the defendant results." State v. Viera, 346 N.J.Super. 198, 217, 787 A.2d 256 (App.Div.2001), certif. denied, 174 N.J. 38, 803 A.2d 634 (2002) (quoting State v. Greenberg, 154 N.J.Super. 564, 567-68, 382 A.2d 58 (App.Div. 1977), certif. denied, 75 N.J. 612, 384 A.2d 842 (1978)). "Thus, [a] guilty verdict may be molded to convict on a lesser included offense even if the jury was not instructed on that offense if `(1) defendant has been *806 given his day in court, (2) all the elements of the lesser included offense are contained in a more serious offense, and (3) defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict.'" Ibid. (quoting State v. Farrad, 164 N.J. 247, 266, 753 A.2d 648 (2000)). There is no question that the elements of third-degree theft from the person have been established. N.J.S.A. 2C:20-3a. Indeed, defendant admitted what he stole from Rendon. This matter is remanded to enter a conviction on the lesser-included third-degree offense of theft from the person.

V.
Defendant argues that the nine year sentences imposed by the trial court violated the law under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In State v. Natale, 373 N.J.Super. 226, 861 A.2d 148 (App.Div. 2004), certif. granted, 182 N.J. 425, 866 A.2d 981 (2005), this court determined that a trial judge may only increase a presumptive sentence based on jury fact-finding of aggravating factors beyond a reasonable doubt, with the exception of those relating to a prior conviction. Id. at 236, 861 A.2d 148. In the case of prior convictions, the trial court may impose a greater sentence absent jury findings on that issue. Defendant has no record of prior convictions. Therefore, the predicate for the recidivism exception based on prior convictions was absent. See also, State v. Abdullah, 372 N.J.Super. 252, 858 A.2d 19 (App.Div.), certif. granted, 182 N.J. 208, 863 A.2d 365 (2004) (recognizing the recidivism exception expressed in Blakely which is inapplicable here). We are, therefore, constrained to vacate the sentence on the reckless manslaughter charge and remand for resentencing.

VI.
Defendant argues that the trial court abused its sentencing discretion by imposing consecutive nine-year terms of imprisonment. Since we have vacated the sentence on reckless manslaughter and reversed the conviction on the robbery charge, we decline to address the propriety of consecutive sentences and express no opinion on the subject.
We reverse and vacate the robbery conviction and remand for entry of a conviction for the crime of third-degree theft from the person and sentencing on that charge. We vacate the sentence for reckless manslaughter and remand for resentencing.