900 A.2d 779

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOSE A. LOPEZ, DEFENDANT–RESPONDENT.

Argued March 7, 2006—Decided June 1, 2006.

*Joseph P. Connor, Jr.,* Assistant Prosecutor, argued the cause for appellant (*Michael M. Rubbinaccio,* Morris County Prosecutor, attorney).

*Alison S. Perrone,* Designated Counsel, argued the cause for respondent (*Yvonne Smith Segars,* Public Defender, attorney;

*Ms. Perrone* and *William P. Welaj,* Designated Counsel, on the briefs).

Justice LONG delivered the opinion of the Court.

The primary issue on this appeal is whether *N.J.S.A.* 2C:15–1(a) encompasses so-called "afterthought" robbery—the situation in which a defendant does not formulate the intent to steal until after force is used. Like the Appellate Division, we have concluded that *N.J.S.A.* 2C:15–1(a) does not encompass afterthought robbery.

## I

On March 17, 2002, Luis Rendon was found dead in the Rockaway River as a result of blunt force trauma to the throat and immersion in water. Defendant, Jose Lopez, was arrested and charged with purposeful/knowing murder, *N.J.S.A.* 2C:11–3(a)(1)–(2); felony murder, *N.J.S.A.* 2C:11–3(a)(3); and robbery, *N.J.S.A.* 2C:15–1(a). The facts elicited during the trial are detailed in the decision below and need not be recounted here in full. *State v. Lopez,* 378 *N.J.Super.* 521, 526–28, 876 *A.*2d 795 (App.Div.2005). Briefly, after a night of drinking, a physical altercation took place between defendant and Rendon that resulted in Rendon's death. At issue is exactly what transpired between them. The State's version was that defendant lured Rendon, who had been wearing a considerable amount of jewelry and buying defendant drinks, to the nearby railroad tracks to rob him, attacked him with a karate chop to the throat, stole his necklace, and left him to die.

Defendant's version was entirely different. He claimed that after Rendon repeatedly propositioned him for sex, they left the bar and walked toward the railroad tracks. Rendon eventually threatened defendant, stating that defendant would have sex voluntarily or by force. A brawl ensued in which Rendon lurched at defendant who countered with a blow to Rendon's throat. Rendon fell face down into the water. Defendant then decided to steal Rendon's necklace, and took it from his neck. He looked into Rendon's wallet, found it to be empty, and tossed it aside.

The State requested that the judge charge the jury that the intent to commit a theft may be formed either before the use of force or after, so long as the theft and the use of force could be considered to constitute a single transaction. The State relied on out-of-state authority to that effect, but acknowledged that there was no New Jersey case law on the issue. During the charge conference, the trial judge recognized that the out-of-state cases were based on statutes that define robbery differently than New Jersey:

> Under ... Article 18, "Robbery," of the Illinois Compiled Statutes, Criminal Offenses, Criminal Code of 1961. It's cited as 720 ILCS 5. And 720 ILCS 5:18-1 is "Robbery," and 18-1(a) says:
>
> > A person commits robbery when he or she takes property, except a motor vehicle covered by Section 18-3 or 18-4, from the person or presence of another by the use of force, or by threatening the imminent use of force.
>
> Now trying to boil this down, the way I see it is that focuses on the commission of the crime. In other words, when it says "when he or she takes property." New Jersey has a different approach here.

After reiterating the language of *N.J.S.A.* 2C:15-1(a), the judge continued:

> Now the reason I emphasize that is it makes sense to me that the Court in Illinois would come [up] with the concept of the afterthought and try to explain how that relates to a robbery, when you've got the narrower language in Illinois that "a person commits a robbery when he or she takes property." ...
>
> Here, New Jersey attempts to deal with that by saying, we're going to give you a definition of what an act—when an act occurs in the course of committing a theft. In the course of committing a theft, it occurs in an attempt to commit a theft or in immediate flight after the attempt or commission.
>
> So I guess what I'm saying is this. That, to start with, New Jersey's definition is broader, more encompassing. And if we get into New Jersey's definition, which of course we will get into it because that's the law of this state, I'm wondering, if I charge afterthought, what am I doing. Am I in some way going to intrude upon what the Legislature intended by the definition of a robbery. Maybe I shouldn't leave robbery, except as it is defined, not go into the afterthought at all.

Ultimately, the trial judge recognized afterthought robbery and instructed the jury in the following terms:

> If you find that the circumstances of the alleged robbery reveal that the defendant intended to permanently deprive the owner of his property and the taking was—was accomplished in part by the prior knowing use of force by the defendant, then it makes no difference whether the intent to steal was formulated before the use of force or after it, so long as the intent to steal and the use or threat of force can be found as constituting a single transaction.

> If you find that after the incident involving the alleged use of force between Luis Rendon and the defendant Jose Lopez had ended, and you find the defendant then formed the intent to permanently deprive Luis Rendon of his property and remove property from the person of Luis Rendon, then you should consider whether the defendant is guilty of the lesser included offense of theft, which I shall hereafter explain.

Defendant objected to the afterthought concept and argued that the language of the Model Jury Charge for robbery was sufficient. Defendant further argued that the two paragraphs of the charge as given effectively negated each other and confused the jury.

The jury later requested clarification regarding the single transaction language: "[W]hen the force ends is that one transaction, is the theft another transaction? Our difficulty is on how to determine what constitutes a single transaction. Is there a time limit?" In response, the judge instructed:

> The law does not provide a specific time limit for a single transaction. Under the law, in the course of committing a theft has been defined to mean that a theft continues until the actor reaches a point of at least temporary safety. The language of a single transaction is used to define a single event or single occurrence. The jury is to decide whether under the facts as it finds them to be the use of force and the intent to steal are overlapping or concurrent in when they occurred, or whether one ended before the other began.

Defendant again objected.

Defendant was acquitted of purposeful/knowing murder, convicted of the lesser-included offense of second-degree reckless manslaughter, acquitted of felony murder, and convicted of second-degree robbery. He was sentenced to consecutive nine-year terms of imprisonment for reckless manslaughter and robbery with an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act, *N.J.S.A.* 2C:43–7.2.

Defendant appealed. In a published opinion, the Appellate Division determined that the robbery statute does not include afterthought robbery and that the jury instruction and reinstruction that suggested otherwise were fatally defective. *Lopez, supra,* 378 *N.J.Super.* at 530–35, 876 *A.2d* 795.[1] The panel reasoned

---

[1] The panel also noted that the instructions were so inconsistent and confusing that even if it had recognized afterthought robbery, a reversal may have been required. *State v. Lopez,* 378 *N.J.Super.* 521, 535, 876 A.2d 795 (App.Div.2005).

that because defendant was acquitted of felony murder, which requires the victim's death to occur "during the commission" of a robbery or in flight therefrom, the jury must have based the conviction for robbery on the afterthought concept. *Id.* at 536–37, 876 *A.2d* 795. As such, that conviction could not stand. The panel molded the verdict and remanded the case to the trial judge to enter a judgment of conviction on the lesser-included offense of third-degree theft from the person.[2] *Id.* at 537–38, 876 *A.2d* 795.

## II

Conceding that the plain language of the robbery statute does not explicitly encompass afterthought robbery, the State argues that the legislative history of the statute—which broadened its coverage—suggests otherwise. In the State's view, defendant committed robbery when he stole the victim's wallet and jewelry immediately after disabling him, and that it is of no consequence whether the intent to steal was formed before or after the victim was disabled because defendant's actions constituted "one brief, uninterrupted sequence." In any event, the State contends that because the reversal was based on trial error, it should have had the option of retrying defendant on robbery.

Defendant counters that *N.J.S.A.* 2C:15–1(a) facially excludes afterthought robbery and that the statute is applicable only to defendants who formulate the intent to steal prior to the use of force. Defendant also urges us to apply the doctrine of lenity, which requires an ambiguous penal statute to be interpreted in his favor. Further, defendant contends that the Appellate Division correctly ordered the judgment of conviction to reflect a third-degree theft. Alternatively, defendant claims that if afterthought

---

[2] The Appellate Division vacated the sentence on reckless manslaughter because it exceeded the presumptive term without jury fact-finding in contravention of *Blakely v. Washington,* 542 *U.S.* 296, 124 *S.Ct.* 2531, 159 *L.Ed.*2d 403 (2004), and remanded for resentencing. *Lopez, supra,* 378 *N.J.Super.* at 538–39, 876 *A.2d* 795.

robbery is recognized, he is entitled to a new trial because of the trial judge's erroneous jury instructions.

## III

The common law defined robbery generally as theft of property from the victim's person or presence by force or by putting the victim in fear. *State v. Cottone*, 52 *N.J.Super.* 316, 323, 145 *A.*2d 509 (App.Div.1958), *certif. denied*, 28 *N.J.* 527, 147 *A.*2d 305 (1959). Put another way, common-law robbery was a combination of the common-law crimes of assault and larceny. *State v. Mejia*, 141 *N.J.* 475, 492, 662 *A.*2d 308 (1995), *overruled on other grounds by State v. Cooper*, 151 *N.J.* 326, 407, 700 *A.*2d 306 (1997).

In adopting the *New Jersey Code of Criminal Justice* (the Code), the Legislature intended to "revise and codify the [criminal] law in a logical, clear and concise manner." Daniel Louis Grossman, *The New Jersey Code of Criminal Justice: Analysis and Overview*, 3 *Seton Hall Legis. J.* 1, 1 (1977). With respect to robbery, however, the Code remained "substantially unchanged" from *N.J.S.A.* 2A:141–1, its predecessor. Senate Judiciary Committee, *Statement to Senate Bill No. 738*, at 6 (May 15, 1978). That statute "was declaratory of the common law." *State v. Carlos*, 187 *N.J.Super.* 406, 413, 455 *A.*2d 89 (App.Div.1982).

Our current statute, *N.J.S.A.* 2C:15–1(a), provides:

a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

In turn, a person is guilty of theft under *N.J.S.A.* 2C:20–3(a) "if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." We

have stated that "[a]ttempted theft is defined by combining the foregoing definition of theft with *N.J.S.A.* 2C:5–1(a). It is an abortive effort to perpetrate a theft." *State v. Farrad,* 164 *N.J.* 247, 257, 753 *A.*2d 648 (2000) (quoting *Carlos, supra,* 187 *N.J.Super.* at 412, 455 *A.*2d 89).

 Theft is a specific intent crime. *Mejia, supra,* 141 *N.J.* at 495, 662 *A.*2d 308. It follows that robbery, as an aggravated form of theft, *State v. White,* 297 *N.J.Super.* 376, 381, 688 *A.*2d 142 (App.Div.1997), is a specific intent crime as well. *Mejia, supra,* 141 *N.J.* at 495, 662 *A.*2d 308. "Robbery ... requires proof of the defendant's larcenous intent. Absent proof of the specific intent to steal, a defendant cannot be found guilty of robbery." *Ibid.* In other words, without the intention to steal evidenced by a theft or attempted theft, there can be no robbery. "In this sense, all robberies are thefts but not all thefts are robberies." *Ibid.* Accordingly, we have held that the elements of robbery are:

(1) theft or attempted theft; (2) intimidating or assaultive conduct consisting of (a) inflicting bodily injury upon another or (b) threatening another with or purposely putting him in fear of immediate bodily injury or (c) committing or threatening immediately to commit any crime of the first or second degree [or (d) using force upon another person]; (3) the intimidating or assaultive conduct must have occurred during the theft or attempted theft or in immediate flight after the theft or attempted theft; and (4) defendant must have acted purposely.

[*Farrad, supra,* 164 *N.J.* at 257, 753 *A.*2d 648 (quoting *Carlos, supra,* 187 *N.J.Super.* at 412, 455 *A.*2d 89 (1982)).]

Obviously, if the intimidating or assaultive conduct that elevates theft to robbery must occur "during the theft or attempted theft or in immediate flight therefrom," it follows that intimidating or assaultive conduct that is unrelated to a theft cannot elevate the theft to robbery. Indeed, that is the gravamen of the commentary to the *Model Penal Code* (MPC), on which our robbery statute is patterned. *Id.* at 259, 753 *A.*2d 648; *State v. Mirault,* 92 *N.J.* 492, 496, 457 *A.*2d 455 (1983).[3] The commentary states that "the core

---

[3] *Model Penal Code* § 222.1 states in pertinent part:

(1) Robbery Defined. A person is guilty of robbery if, in the course of committing a theft, he:

of the robbery offense is the combination of theft and the fact or threat of immediate injury," and that robbery "is committed if the required special circumstances [the threat of or actual injury] exist at any point from the *beginning of an attempt to commit a theft* through the end of the flight following its attempt or commission." *Model Penal Code & Commentaries,* Part II § 222.1 at 98–99 (emphasis added). That language evidences an objective on the part of the MPC drafters to punish those who use force at any time after forming the intent to commit a theft. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3(e) (2d ed.2003) (suggesting MPC and statutes based on MPC would not recognize afterthought robbery).

The State argues that the legislative history of the robbery statute, particularly the Legislature's addition of the words "to be included in the phrase" in subsection (a)(3), reveals an attempt at a general broadening that should be read to incorporate afterthought robbery. That is incorrect. Indeed, the Legislature itself noted that the addition of the words "to be included in the phrase" was not a "substantive change." Assembly Judiciary, Law, Public Safety and Defense Committee, *Statement to Assembly Bill No. 3279,* at 7 (June 28, 1979).

To be sure, robbery under *N.J.S.A.* 2C:15–1(a) is different from its predecessor and the common law in several ways. "First, *N.J.S.A.* 2C:15–1(a) authorizes prosecution for robbery when an injury or threat was inflicted upon a victim other than the custodian of the property. Second, it reaches acts committed during an escape from the theft or attempted theft. Third, it eliminates the element of asportation." *Farrad, supra,* 164 *N.J.*

---

(a) inflicts serious bodily injury upon another; or
(b) threatens another with or purposely puts him in fear of immediate *serious bodily injury;* or
(c) commits or threatens immediately to commit any felony of the first or second degree.
An act shall be deemed "in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission.

at 259, 753 *A*.2d 648 (citations omitted). Thus, as the State urges, in enacting *N.J.S.A.* 2C:15–1(a), the Legislature did broaden the application of the robbery statute in certain specific respects. *Ibid.; Mirault, supra,* 92 *N.J.* at 496, 457 *A.*2d 455. However, there is no indication that it intended to broaden the statute other than in the specific ways that are reflected in those changes or to alter the fundamental nature of robbery, the focus of which is the use of violence to effectuate a theft or flight therefrom.

The State also relies on out-of-state case law that recognizes afterthought robbery. Because the statutory and common-law language governing robbery in most states differs considerably from our language, out-of-state case law on the subject of after-thought robbery is not directly on point. It seems clear, however, that there are two general schools of thought on the subject—one recognizing the afterthought concept and the other rejecting it. *Compare People v. Davis,* 36 *Cal.*4th 510, 31 *Cal.Rptr.*3d 96, 115 *P.*3d 417, 452 (2005) (stating "[i]f the defendant does not harbor the intent to take property from the possessor at the time he applies force or fear, the taking is only a theft, not a robbery"), *Beasley v. State,* 774 *So.*2d 649, 662 (Fla.2000) (stating robbery convictions not upheld "where the record discloses that, in committing the murder, the defendant was apparently motivated by some reason other than a desire to obtain the stolen valuable"), *Commonwealth v. Moran,* 387 *Mass.* 644, 442 *N.E.*2d 399, 401 (1982) (stating, "where the intent to steal is no more than an afterthought to a previous assault, there is no robbery"), and *Branch v. Commonwealth,* 225 *Va.* 91, 300 *S.E.*2d 758, 759 (1983) (stating, "[t]he intent to steal and the taking must coexist" and "the offense is not robbery unless the *animus furandi* was conceived before or at the time the violence was committed") *with State v. Iaukea,* 56 *Haw.* 343, 537 *P.*2d 724, 734 (1975) (stating, "[t]he appellant's acts of violence or intimidation need not be done for the very purpose of taking the victim's property to constitute robbery"), *Metheny v. State,* 359 *Md.* 576, 755 *A.*2d 1088, 1105 (2000) (stating, "a felon who applies force to neutralize a victim should be held responsible for that action if the felon later decides

to take advantage of the situation by robbing the victim"), and *Chappell v. State*, 114 *Nev.* 1403, 972 *P.*2d 838, 841 (1998) (stating, "in robbery cases it is irrelevant when the intent to steal the property is formed"), *cert. denied*, 528 *U.S.* 853, 120 *S.Ct.* 318, 145 *L.Ed.*2d 114 (1999).

■ In our view, the cases that decline to recognize afterthought robbery are legally unassailable insofar as they take their lead from the nature of the crime of robbery as an aggravated form of theft. We do the same. So viewed, our statute requires that the threats or violence be carried out in furtherance of the intention to commit a theft. Indeed, the sequence of events is critical; the intention to steal must precede or be coterminous with the use of force. That is why a person who has stolen goods and thereafter uses violence in flight is guilty of robbery—the intention to commit the theft generated the violence. That model simply does not work where a violent fracas occurs for reasons other than theft, and the perpetrator later happens to take property from the victim. In the former example, the theft is the reason for the violence and a robbery has occurred. In the latter, the violence and the theft are unconnected, and the perpetrator is guilty of assault and theft but not of robbery.

That said, and because "erroneous instructions on material issues are presumed to be reversible error," *State v. Marshall*, 173 *N.J.* 343, 359, 801 *A.*2d 1142 (2002) (*Marshall IV*) (citing *State v. Martin*, 119 *N.J.* 2, 15, 573 *A.*2d 1359 (1990); *State v. Grunow*, 102 *N.J.* 133, 148, 506 *A.*2d 708 (1986)), the instruction and reinstruction, which suggested an afterthought robbery crime that does not exist, require a reversal of the robbery conviction.

## IV

■ With respect to further proceedings, defendant argues that the only way to reconcile the verdicts would be to read them as having acquitted him of robbery and convicted him of afterthought robbery, thus barring a retrial on robbery. According to defendant, any other reading would render the verdicts fatally inconsis-

tent. We disagree. We do not accept defendant's premise that the verdicts were necessarily inconsistent, but even if we did, we would reject his claim for relief.

■ "Inconsistent verdicts are accepted in our criminal justice system." *State v. Banko,* 182 *N.J.* 44, 53, 861 *A.*2d 110 (2004). The reason that we accept such verdicts is "because it is beyond our power to prevent them." *Id.* at 54, 861 *A.*2d 110. "We do not speculate why a jury acquits. We accept inconsistent verdicts ... so long as the evidence was sufficient to establish guilt on the substantive offense beyond a reasonable doubt." *Id.* at 54–55, 861 *A.*2d 110.

What we recently stated in *State v. Muhammad* is equally applicable here:

> Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment. Our jurisprudence does not allow us to conjecture regarding the nature of the deliberations in the jury room. In reviewing a jury finding, we do not attempt to reconcile the counts on which the jury returned a verdict of guilty and not guilty. Instead, we determine whether the evidence in the record was sufficient to support a conviction on any count on which the jury found the defendant guilty.
>
> [*State v. Muhammad,* 182 *N.J.* 551, 578, 868 *A.*2d 302 (2005) (citations omitted).]

The State's evidence and theory of the case, that defendant lured Rendon to the train tracks to rob him, if believed by the jury, would support a conviction for robbery under *N.J.S.A.* 2C:15–1(a). Indeed, as the Appellate Division recognized, a prima facie case for robbery was presented:

> Based on circumstantial evidence, the State's proofs, if believed, showed that defendant formulated a plan to rob the victim early in the evening. Defendant admired the victim's jewelry when the two men were drinking at a bar. Defendant did not readily submit to Rendon's sexual entreaties, but continued to fraternize and drink with him until they closed the bar. At that point, Rendon would have been seen as more vulnerable and less able to defend against a robbery attempt. Of course, the jury did not have to believe that the fatal blow to Rendon was struck in warding off a sexual advance, but was, rather, struck in the commission of a robbery where an unanticipated defense was put up by the victim. Furthermore, there is no question that defendant stole property belonging to Rendon.
>
> [*Lopez, supra,* 378 *N.J.Super.* at 536, 876 *A.*2d 795.]

Because there was sufficient evidence to create a jury issue on robbery, molding the verdict to the lesser offense of theft was unwarranted. We thus reverse and remand the matter for retrial on the robbery count. *State v. Koedatich,* 118 *N.J.* 513, 519, 572 *A.*2d 622 (1990) (stating no double jeopardy issue involved in retrying "a defendant who has succeeded in obtaining reversal of his conviction based on trial errors").

## V

The judgment of the Appellate Division is affirmed in part and reversed in part. The matter is remanded to the trial judge for further proceedings consistent with the principles to which we have adverted.

*For affirmance in part/reversal in part/remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.