**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0517-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ALEXANDRE SAUNDERS,

     Defendant-Appellant.

_____

Argued November 12, 2025 – Decided January 22, 2026

Before Judges Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 21-07-0567.

Jarred S. Freeman argued the cause for appellant (Freeman & Patel, LLC, Barry Coburn (Coburn, Greenbaum & Eisenstein, PLLC) of the District of Columbia bar, admitted pro hac vice, and Marc J. Eisenstein (Coburn, Greenbaum & Eisenstein, PLLC) of the District of Columbia bar, admitted pro hac vice, attorneys; Jarred S. Freeman, Barry Coburn, and Marc J. Eisenstein, on the briefs).

Colleen Kristan Signorelli, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause

for respondent (Wayne Mello, Acting Hudson County Prosecutor, attorney; Colleen Kristan Signorelli, on the brief).

PER CURIAM

Defendant Alexandre Saunders appeals from the June 2, 2023 order denying his motion for a new trial or judgment notwithstanding the verdict (JNOV). After reviewing the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. In July 2021, defendant was charged by indictment with third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and third-degree aggravated assault significant bodily injury, N.J.S.A. 2C:12-1(b)(7) (count four).

In May 2022, following a six-day jury trial, defendant was found guilty of third-degree aggravated assault causing significant bodily injury, N.J.S.A. 2C:12-1(b)(7). Six months later, defendant filed a JNOV motion or new trial

A-0517-24

based on newly discovered evidence. The court denied defendant's motion. In July 2023, the court sentenced defendant to one-year of non-custodial probation.

We briefly summarize the evidence adduced at trial. On December 25, 2019, the Jersey City Police Department (JCPD) responded to Pavonia Avenue after receiving a 911 call reporting an assault. Upon their arrival, the police spoke with the victim, J.S.[1], who was bleeding from his right ear, had blood on his left hand, and appeared very upset.

Since early December, J.S. had been renting a bedroom in the basement of Pavonia Avenue from defendant via Airbnb. On the day of the incident, J.S. heard a loud banging on his bedroom door. When he opened the door, defendant demanded his money and pulled J.S. out of the bedroom. Defendant continued to yell "you owe me ([f***ing)] money" and "you're getting the ([f***]) out" while locking J.S. out of his rented bedroom. J.S., surprised by defendant's "erratic" behavior, tried to grab the bedroom key. Next thing he knew, defendant was "pummeling me and then he [] reached around and [] bit my . . . right ear, the top of it." J.S. saw "blood spurting[,]" was "in shock[,]" and was not sure if the blood was from the bite or punches.

---

[1] We use initials to protect the confidentiality of the victim.

A-0517-24

According to J.S., defendant said "you don't know who you're ([f***ing)] dealing with and I'm going to . . . kill you." Defendant went upstairs and J.S. noticed a woman—later identified as defendant's sister—in the basement. He reported that she was "putting her arms in front of [defendant] and saying, [']stop, stop. You're . . . acting crazy[']." Defendant then went around his sister and "came at" J.S. with a "kitchen butcher knife[,]" nicking his left pinky. J.S. fled through the basement patio doors and called 911 requesting an ambulance. Notably, J.S. did not witness defendant or defendant's sister exit the residence while he waited for help. When police arrived, he learned that his ear had been bitten off. As a result of the incident, J.S. lost part of his right ear and needed five stitches on his left pinky.

Defendant also called 911 minutes after the incident, stating:

> Hi. Uh, my sister just called me. She said there is a — drunk man, he's (indiscernible) my property, he's — he's bleeding, and she's claiming that he lives in our house and he's trying to get in . . . to the (indiscernible). She's a . . . female. She's 21 years old. She's terrified. And the property is [] Pavonia Avenue, Jersey City, New Jersey.

When asked for a description of the man, defendant relayed:

> Uh, white male, probably 40, 41, 42 perhaps she said. I asked her that. She said he's . . . bleeding on the ear and he's saying that he lives on the property. He

4

A-0517-24

does not live on the property. He . . . t[ri]ed to grab her and then she . . . got terrified. She just ran in. She's 21 years old.

I'm not home at the moment and I . . . just need the police and ambulance to come in to treat this man because it's causing a lot of disturbance.

After the police's arrival, they spoke with J.S. and attempted to speak to defendant, but defendant's sister denied them entry into the residence. However, the officers saw through the residence's window defendant's sister walking into the basement with a bottle of bleach. When she noticed the officers, she appeared startled and turned off the basement lights.

Neither defendant nor his sister testified at trial. On May 19, 2022, the jury returned its verdict, finding defendant guilty of aggravated assault. On June 25, 2022, approximately one month after defendant was convicted, defendant's sister reported to JCPD that on December 25, 2019, J.S. had attempted to sexually assault her but was unsuccessful because she bit off his ear. She reported that she went upstairs to her apartment and called her brother after calling the police. Defendant's motion for a new trial was based on this newly discovered evidence, which consisted of his sister's report of J.S.'s attempted sexual assault. After oral argument, the trial court denied the motions for a new trial and a JNOV.

5

Defendant raises the following contentions for our consideration:

POINT I

[Defendant's] Appeal Should Be Granted Because The Trial Court Erred By Denying His Motion For A Judgment Notwithstanding The Verdict Or In The Alternative A New Trial.

A. The Trial Court Erred By Denying [Defendant's] Motion For Judgment Not-Withstanding The Verdict Of Guilty.

B. The Trial Court Erred By Denying [Defendant's] Motion For A New Trial.

i. The Trial Court Erred By Denying [Defendant's] Motion For A New Trial Based On Newly Discovered Evidence.

II.

A.

We first address defendant's contention that the trial court erred by denying his motion for JNOV. Defendant argues that the trial court erred by denying his motion because (1) the jury's verdicts were inconsistent; and (2) the evidence was insufficient to prove defendant's guilt of aggravated assault, and the verdict was against the weight of the evidence.

6

A-0517-24

Our analysis begins with the governing legal principles for reviewing a motion for a JNOV. Our standard of review of a "trial court's denial of defendant's motion for a judgment of acquittal notwithstanding the verdict" is de novo. State v. Lodzinski, 246 N.J. 331, 357 (2021) (first citing State v. Jones, 242 N.J. 156, 168 (2020); and then citing State v. Williams, 218 N.J. 576, 593-94 (2014)). We evaluate "a sufficiency-of-the-evidence challenge to [the] conviction" using the same standard a trial court uses in deciding a motion for an acquittal under Rule 3:18-2(d). Id. (citations omitted); State v. Fuqua, 234 N.J. 583, 590 (2018).

When reviewing a trial court's decision on a JNOV motion, we determine whether the evidence adduced at trial, "by viewing it in its entirety, and by giving the State the benefit of all reasonable inferences," was sufficient to support a guilty verdict. Lodzinski, 246 N.J. at 358-59 (quoting State v. Josephs, 174 N.J. 44, 86 (2002)). "If, 'accepting as true all the evidence which supports the position of the party defending against the motion and according [that party] the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ,' the motion for JNOV 'must be denied.'" Conforti v. Cnty. of Ocean, 255 N.J. 142, 162-63 (2023) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 415 (1997)).

A-0517-24

"Inconsistent verdicts are accepted in our criminal justice system" as "it is beyond our power to prevent them." State v. Banko, 182 N.J. 44, 53, 54 (2004) (citations omitted). "Consistency in the verdict is not necessary" because "[e]ach count in an indictment is regarded as if it was a separate indictment." Dunn v. United States, 284 U.S. 390, 393 (1932). "We do not speculate why a jury acquits. We accept inconsistent verdicts . . . so long as the evidence was sufficient to establish guilt on the substantive offense beyond a reasonable doubt." State v. Lopez, 187 N.J. 91, 102 (2006) (omission in original) (quoting Banko, 182 N.J. at 54-55).

In this case, the jury found defendant guilty of aggravated assault but acquitted him of the remaining weapons offenses. "A person is guilty of aggravated assault if he . . . [a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life recklessly causes such significant bodily injury." N.J.S.A. 2C:12-1(b)(7). "Significant bodily injury" is defined as "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." N.J.S.A. 2C:11-1(d). "Bodily injury" is defined

as "physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a).

As the trial court correctly found, "the fact that the jury acquitted . . . defendant of the weapons charges does not preclude defendant's conviction under N.J.S.A. 2C:12-1(b)(7), as [the] elements required to prove the weapons charges are not mutually exclusive to the elements required to prove the aggravated assault charge." The jury could reasonably have found that defendant bit the ear of the victim thus causing significant bodily injury but was not convinced beyond a reasonable doubt that defendant possessed the knife for an unlawful purpose or used it to injure defendant's finger. A jury is free to "accept all . . . , a portion . . . , or none of a witness's testimony." State v. Muhammad, 182 N.J. 551, 577 (2005). Jurors "may reject what in their conscientious judgment ought to be rejected and accept that which they believe to be credible." Ibid. We conclude that the competent and substantial evidence does not demonstrate that the verdicts were in fact inconsistent.

Moreover, substantial evidence supports defendant's conviction for aggravated assault. J.S.'s testimony regarding the injury to his ear was corroborated by several of the State's witnesses, including the police officers who arrived on the scene moments after the incident and observed his injuries.

The photographs of his injuries and the 911 call J.S. made moments after the incident, unequivocally stating "he bit my ear," further supports his testimony of the assault. We are satisfied the evidence adduced at trial was sufficient to support the guilty verdict and defendant was not entitled to a judgment notwithstanding the verdict. See Lodzinski, 246 N.J. at 358-59.

B.

We turn next to defendant's contention that the trial court abused its discretion in denying his motion for a new trial. Defendant contends the trial court abused its discretion by denying his motion for a new trial because the jury's verdict was against the weight of the evidence and defendant's claim of newly discovered evidence warranted a new trial.

Our standard of review of a trial court's ruling on a motion for a new trial is deferential, and the court's decision "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." State v. Armour, 446 N.J. Super. 295, 305 (App. Div. 2016) (quoting R. 2:10-1). Furthermore, "a motion for a new trial is addressed to the sound discretion of the trial judge, and the exercise of that discretion will not be interfered with on appeal unless a clear abuse has been shown." Id. at 306 (quoting State v. Russo, 333 N.J. Super. 119, 137 (App. Div. 2000)).

10

"Rule 3:20-1 and -2 provide a mechanism for seeking a new trial following a criminal conviction." Id. at 305. "Rule 3:20-2 permits a defendant to do so 'on the ground of [newly discovered] evidence' at any time." Ibid. A new trial is only granted if the new evidence is: "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted." State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020) (quoting State v. Carter, 85 N.J. 300, 314 (1981)).

The New Jersey Supreme Court has recognized that "prongs one and three [of the newly discovered evidence test] are inextricably intertwined." State v. Nash, 212 N.J. 518, 549 (2013). "'[E]vidence that would have the probable effect of raising a reasonable doubt as to [] defendant's guilt would not be considered merely cumulative, impeaching, or contradictory.'" Ibid. (quoting State v. Ways, 180 N.J. 171, 189 (2004)). "'The power of the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence.'" Id. at 449-50 (quoting Ways, 180 N.J. at 191-92).

A different judge decided this motion than the one who presided over the jury trial.[2] Defendant seems to argue that error occurred because the judge who presided over the trial did not decide the motion although he cites no legal authority to support this proposition. We recognize that such motions are best resolved by the same judge who presided over the trial and had the ability to see and hear firsthand the evidence presented. In this case, the motion judge reviewed the parties' submissions and considered the arguments presented. Therefore, the fact that a different judge decided the motion presents no error.

The motion judge properly applied the correct legal standard when reviewing the motion for a new trial. Ways, 180 N.J. at 187-93 (2004) (citing Carter, 85 N.J. at 314). The motion judge also correctly found the timing of defendant's sister's statement suspect and "its discovery [was] problematic." Defendant and his sister lived together at the time of the incident; she was present in the residence on the day of the offense; and the information she later provided to law enforcement could reasonably have been discovered through due diligence. "A defendant is not entitled to benefit from a strategic decision to withhold evidence." Ways, 180 N.J. at 192.

---

[2] According to the record, the trial judge was transferred to another vicinage and thus not available to hear the motion.

A-0517-24

The motion judge correctly concluded that the evidence was discoverable before trial. Defendant's 911 call on the date of the incident references his sister and the alleged sexual assault:

> [DEFENDANT]: Uh, my sister just called me. She said there is a — drunk man, he's (indiscernible) my property, . . . he's bleeding, and she's claiming that he lives in our house and he's trying to get in . . . .

Defendant also reported to the 911 call taker that J.S. attempted to "grab" his sister.

Though defendant argues that his sister "chose not to speak to the police that day" because she "was afraid and embarrassed[,]" his claim that he was unaware of this potential evidence is belied by the record. Therefore, we are satisfied the motion judge did not abuse his discretion by finding that this alleged newly discovered evidence was available at the time of trial and thus appropriately denied defendant's motion for a new trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0517-24