SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. Andrea K. Dunbrack; State v. Gabriel Rodriguez** (A-27-19) (083008)

**Argued September 14, 2020 -- Decided March 22, 2021**

**PIERRE-LOUIS, J., writing for the Court.**

In this appeal, the Court considers whether the trial court erred in not including theft as a lesser included offense to robbery sua sponte in its instructions to the jury.

In June 2014, Hamilton police officers pulled into a parking lot of an abandoned building and found defendants Andrea Dunbrack and Gabriel Rodriguez standing near an unoccupied vehicle. The police observed the victim, N.R., lying on the ground in the fetal position, verbally unresponsive, naked, and bloodied. A small fire was ablaze nearby. N.R.'s clothes were strewn about on the ground and on the front passenger seat of Dunbrack's car, along with his passport, wallet, and money. A gun stained with N.R.'s blood lay on the driver's seat, and police later retrieved another gun on Dunbrack's person. The officers arrested Dunbrack, whose feet had N.R.'s blood on them. Rodriguez fled as police approached, and police later arrested him with N.R.'s cell phone in his pocket. Rodriguez and Dunbrack were charged with robbery, among other offenses, and were tried together.

N.R. testified that Rodriguez approached him at a bar in Trenton and asked him if he wanted a cheap taxi ride home. N.R. accepted the offer. Dunbrack was driving the car, Rodriguez was in the passenger seat, and N.R. sat in back. Dunbrack later stopped the car. Rodriguez then exited, opened the rear passenger door, pointed a gun at N.R., and told N.R. to hand over his money or he would be killed. N.R. testified that as he began giving Rodriguez his wallet and cell phone, Rodriguez hit him in the face with the gun. After being hit, N.R. blacked out. N.R. recalled being told to take off his clothes and testified that he thought he was going to die when Rodriguez pointed the gun at him.

Dunbrack testified that she was in her vehicle when Rodriguez emerged from the bar with N.R., whom she had never seen before. Dunbrack figured Rodriguez and N.R. were going to head to more bars and sat in the back seat with N.R. while Rodriguez drove. According to Dunbrack, N.R. attempted to sexually assault her. Rodriguez then pulled over and attempted to drag N.R. out of the vehicle as the two men began fighting. Dunbrack was unable to explain how N.R.'s possessions ended up in the front passenger seat of her car, how N.R. came to be completely undressed, or how the fire was started.

1

Prior to Dunbrack's testimony, the court held a charge conference and Dunbrack's counsel asked the trial judge, "what about lesser includeds?" but did not mention theft. In response, the trial judge advised that, based on the testimony thus far, there was no rational basis for a lesser included charge of theft. The next day, after Dunbrack testified, Dunbrack's attorney stated at another charge conference that there could be justification charges for self-defense and use of force in the defense of others. Dunbrack's counsel then raised the potential applicability of "the various levels of assault" and "possibly a theft from a person or a theft in general" if there was some type of justification for the assault. Counsel noted that he "just wanted to throw that out there based on Ms. Dunbrack's testimony." The conversation shifted to a discussion of the justification defenses, and Dunbrack's counsel successfully argued for the inclusion of the defenses in the jury charge. Dunbrack's counsel never again mentioned the possibility of a theft charge, and Rodriguez's counsel never suggested that theft should be charged. Both defense attorneys advised the court that they had no objections to the final jury charge.

The jury convicted both defendants on all charges. The Appellate Division reversed and remanded for a new trial, holding that the trial court was obligated to give the lesser included theft charge sua sponte because the facts giving rise to that charge were evident from the record. The Court granted certification. 240 N.J. 139 (2019).

**HELD:** The Court finds no error, let alone plain error, in the trial court's omission of a theft charge. Nothing in Dunbrack's version of the events "jumps off the page" as indicative of theft. Neither Dunbrack nor Rodriguez requested an instruction on theft, and the trial court was not required to scour the record for a combination of facts to justify giving such a lesser included jury charge.

1. A trial court's determination of whether to include a charge to a lesser included offense is governed by N.J.S.A. 2C:1-8(e). When a defendant requests a charge to a lesser included offense, the trial court is obligated to examine the record thoroughly to determine if there is a rational basis for finding that the defendant was not guilty of the higher offense charged but guilty of a lesser included offense. If a defendant did not request a charge or did not object to the omission of a charge to a lesser included offense, the Court's appellate review assesses whether the record "clearly indicated" the charge, such that the trial court was obligated to give it sua sponte. In determining whether the facts clearly indicate that a charge should be given, the trial court is not required to scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty. The trial court is also not saddled with the burden of sifting through the record to find some combination of facts and inferences that might rationally sustain the lesser included offense. The record clearly indicates a lesser included charge if the evidence is jumping off the page. (pp. 17-18)

2. A trial court should only instruct the jury on theft as a lesser included offense of robbery if there is a question whether the defendant's act of inflicting bodily injury, using

force upon another or threatening another with or purposely putting him in fear of bodily injury occurred in the course of committing a theft. The Court discusses State v. Cassady, 198 N.J. 165 (2009), where it held that the trial court properly determined that no rational basis existed for charging theft as a lesser included offense to robbery. In Cassady, the defendant was charged with armed robbery of a bank after he approached a bank teller and passed a note requesting money. When the bank teller did not comply, the defendant raised his voice and jumped over the bulletproof glass window separating the tellers from the customers. The teller testified that she was so scared she thought he would kill her. The Court found that the facts were clear and unequivocal that this was a bank robbery and no rational jury could come to any other conclusion. (pp. 19-21)

3. The Court reviews this matter using the clearly indicated standard because defense counsel did not explicitly request the theft charge. Dunbrack's counsel's pondering or "throwing out there" the possibility of several charges can hardly be interpreted as a request for a jury instruction. It should not be incumbent upon the trial judge to sift through the trial transcript to decipher whether musings of counsel at any point throughout the trial could be interpreted as a request for a jury charge. The importance of requiring a clear request from counsel is underscored by considerations of trial strategy. Having secured jury instructions to affirmative defenses, defense counsel could have made the strategic choice to argue for acquittal, as opposed to a lesser charge -- a choice that a sua sponte instruction by the trial court could have thwarted. (pp. 21-24)

4. Similar to Cassady, the facts in this case do not obviously indicate that a theft, as opposed to robbery, might have occurred. For a theft charge to jump off the page, it would require the facts here to support a finding that the victim was not threatened in any way and was not in fear of his life during the course of the taking of his belongings. The trial court was not obligated to sift through the record to formulate a scenario in which the defendants' act of inflicting bodily injury on N.R. occurred separate and apart from defendants stealing N.R.'s belongings. Rodriguez's argument that the theft of N.R.'s phone occurred separate and apart from the violence and assault ignores the evidence of everything else that was taken from N.R. as he lay on the ground naked and bloodied. Dunbrack's testimony did not make the argument that the theft and violence were unconnected. The trial court instructed the jury on self-defense and use of force in the protection of others, as a result of Dunbrack's testimony. If the jury believed Dunbrack, they were able to acquit her and Rodriguez of the most serious charges. The jury declined to do so and determined that this was a robbery. (pp. 25-27)

**REVERSED. Defendants' convictions are REINSTATED and the matter is REMANDED to the Appellate Division.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.**

SUPREME COURT OF NEW JERSEY

A-27 September Term 2019

083008

State of New Jersey,

Plaintiff-Appellant,

v.

Andrea K. Dunbrack,

Defendant-Respondent.

_____

State of New Jersey,

Plaintiff-Appellant,

v.

Gabriel Rodriguez,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| September 14, 2020 | March 22, 2021 |

Narline Casimir, Assistant Prosecutor, argued the cause
for appellant (Angelo J. Onofri, Mercer County
Prosecutor, attorney; Laura Sunyak, Assistant Prosecutor,
of counsel and on the briefs).

1

Peter T. Blum, Assistant Deputy Public Defender, argued the cause for respondent Gabriel Rodriguez (Joseph E. Krakora, Public Defender, attorney; Peter T. Blum, of counsel and on the briefs).

Robin Kay Lord argued the cause for the respondent Andrea K. Dunbrack (The Law Offices of Robin Kay Lord, attorneys; Robin Kay Lord, on the briefs).

Lauren Bonfiglio, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Lauren Bonfiglio, of counsel and on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this case, we are asked to determine whether the trial court erred in not including theft as a lesser included offense to robbery in its instructions to the jury. Defendants Gabriel Rodriguez and Andrea Dunbrack were charged with robbery, among other offenses. Although defense counsel briefly mentioned the possibility of a lesser included theft charge to be given to the jury, he never explicitly requested the charge. At the conclusion of trial, the jury convicted both defendants of robbery. On appeal, the Appellate Division reversed defendants' convictions and held that the trial court was obligated to give the lesser included theft charge sua sponte because the facts giving rise to that charge were evident from the record. For the reasons stated below, we reverse the decision of the Appellate Division and reinstate the convictions.

2

I.

We rely heavily on the testimony at trial for the following summary. On June 16, 2014, Hamilton Police Officer Robert Whartenby was on patrol in the area of South Olden and Toronita Avenues with his partner, Officer David Walls. At approximately 1:45 a.m., the officers turned onto Toronita Avenue and noticed a vehicle in the parking lot of an abandoned building. The vehicle's headlights were on and the driver's door was open. Officer Whartenby pulled into the parking lot next to the vehicle and noticed there were no occupants inside, but there was a male standing on the passenger's side of the vehicle and a female standing near the rear.

The officers exited their vehicle to investigate further. Upon exiting, the officers asked the man and the woman, later identified as defendants Rodriguez and Dunbrack, to stop. At that time, Officer Walls walked to the rear of the vehicle and observed a small fire the size of a coffee can on the ground. Near the fire was a naked male lying on the ground in the fetal position. According to the officers, the man was breathing heavily, his face and head were covered in blood, and he was not verbally responsive. Upon observing the male on the ground, the officers attempted to secure Rodriguez, but he ran. The officers placed Dunbrack, whose feet had blood on them, in handcuffs and secured her in the back of the patrol car. After securing

3

Dunbrack, the officers turned their attention to putting out the small fire and obtaining medical assistance for the victim, N.R. N.R. was taken to a nearby hospital where he received sutures above his left eye and staples on his head.

Inside the vehicle, Officer Whartenby observed a purse and a blood-stained handgun on the driver's seat. Officers found the victim's underwear and socks on the ground near the rear passenger-side tire, and his t-shirt was near the edge of the woods where the vehicle was parked. Foliage near the victim appeared to contain blood. The victim's pants, passport, and his wallet, which contained money, were on the front passenger seat. A subsequent search of the car revealed business cards in the trunk, including one with the name "Carlos," the words "Cheap Cab/Taxi Baroda," and a phone number. The same phone number appeared on another business card found in the trunk bearing Gabriel Rodriguez's name.

After officers transported Dunbrack to the police station, a female officer conducted a full pat down that revealed a handgun hidden in Dunbrack's bra. Officers subsequently arrested Rodriguez at a nearby diner. In his possession were four cellphones, including one belonging to the victim.

Subsequent testing of the blood on the firearm and Dunbrack's feet confirmed that the blood matched the victim's DNA profile.

On January 18, 2015, a Mercer County Grand Jury charged Rodriguez and Dunbrack in a six-count indictment with the following: first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (Count I); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count II); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count III); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count IV) (Dunbrack only); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (Count V) (Dunbrack only);[1] and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (Count VI) (Rodriguez only).

Rodriguez and Dunbrack were tried together before a jury from December 8-15, 2016. At trial, the victim and Dunbrack testified to very different accounts of what transpired in the early morning hours of June 16, 2014.

A.

The Victim's Testimony

At trial, N.R. testified that around 7:30 p.m. the evening before, he went to a bar in Trenton, ate dinner, drank approximately seven beers, and then left to go to another Trenton bar, Antigua. N.R. arrived at Antigua around 10:00

---

[1] The trial court granted Dunbrack's motion to dismiss Count V at the close of the State's case.

p.m. and, while there, drank approximately three more beers. At some point around midnight or 1:00 a.m., a man, later identified as defendant Rodriguez, approached N.R. and asked him if he wanted a cheap taxi ride home. Although N.R. was not sure he could trust someone offering a cheap taxi ride, he decided to take Rodriguez up on his offer. Rodriguez told N.R. to wait outside and that the cheap taxi would be a gray vehicle. N.R. did as Rodriguez instructed and waited for the car outside the bar.

When the gray car pulled up, Dunbrack was driving and Rodriguez was seated in the front passenger seat. N.R. entered the vehicle and sat behind Rodriguez in the rear passenger seat. N.R. advised them of his address, but he soon realized that Dunbrack was not driving towards his home. When N.R. protested, Dunbrack stopped the car. Rodriguez then exited, opened the rear passenger door, pointed a gun at N.R., and told N.R. to hand over his money or N.R. would be killed. N.R. testified that as he began giving Rodriguez his wallet and cell phone, Rodriguez hit N.R in the face with the gun. After being hit, N.R. blacked out and the next thing he remembered was waking up in the hospital. At some point prior to blacking out, N.R. recalled being told to take off his clothes, but he did not have the best recollection regarding whether he took his clothes off or defendants did so. N.R. testified that he thought he was going to die when Rodriguez pointed the gun at him.

B.

Dunbrack's Testimony

Dunbrack testified in her own defense and recounted a much different story. Dunbrack explained that her permanent residence was in Massachusetts, but at the time, she was working as an exotic dancer at various clubs in New York, New Jersey, and Connecticut. Her agent would advise her of the clubs where she was scheduled to dance, and she would travel to different locations in those states and stay overnight at various motels. In June 2014, Dunbrack's driver's license was suspended, so Dunbrack allowed Rodriguez, whom she called by his nickname "Carlos," to drive her car. Dunbrack testified that she and Rodriguez were just friends, but previously had a romantic relationship. According to Dunbrack, Rodriguez was also from Massachusetts and used to be Dunbrack's neighbor. At the time of the offense, Rodriguez had been driving Dunbrack's car for approximately one year, and Dunbrack paid Rodriguez to drive her to and from her dancing jobs at different nightclubs.

Dunbrack testified that on June 15, 2014, Rodriguez drove her to Atlantic City to meet with an individual she had met at a club two nights prior. According to Dunbrack, the gentleman was on a business trip and he wanted company while he gambled. Dunbrack met him in Atlantic City and went to several establishments with him. The man paid Dunbrack for her time, but

7

there was no sexual activity involved.  When Dunbrack was ready to leave Atlantic City at approximately 9:00 p.m., she called Rodriguez and he picked her up.  Dunbrack stated that she wanted to go home, meaning back to the motel where they were staying, but Rodriguez wanted to go out.  The pair eventually arrived at a bar in Trenton.

Rodriguez went into the bar, but Dunbrack, upset that Rodriguez did not drive her back to the motel, stayed in the car.  At one point, Dunbrack decided to leave Rodriguez at the bar and drove off, but she returned soon thereafter because she felt bad about leaving.  After she returned to the bar, Rodriguez emerged with another man, victim N.R.  Dunbrack said she had never seen N.R. before and figured Rodriguez and N.R. were going to head to more bars.  Upset because she still wanted to go home and because Rodriguez told her to get out of the driver's seat, Dunbrack got into the back seat of the car behind the driver's seat.  N.R. was seated in the rear passenger seat.

Dunbrack testified that Rodriguez drove off and N.R. tried to talk to her, but she could not understand what he was saying because he was speaking Spanish.  Dunbrack claimed that N.R. then touched her leg but she removed his hand and told him "no."  Dunbrack testified that thereafter, N.R. started unbuttoning and pulling off his pants and tried to get on top of her.  Dunbrack stated that she tried to push N.R. off of her and asked Rodriguez, who was still

8

driving, for help. In response, Rodriguez reached over and hit N.R. in the head with something. N.R. began bleeding as a result of the blow to the head by Rodriguez.[2] Dunbrack sprayed N.R. in the face with mace and then pushed and kicked him off of her.[3]

After Rodriguez hit N.R., he pulled the car over, got out of the car, and attempted to drag N.R. out of the vehicle as the two men began fighting. Dunbrack testified that as soon as Rodriguez and N.R. began fighting, she threw her purse on the front passenger seat, got out of the car, and walked around to the other side of the car where the men were fighting. Dunbrack stated that N.R. was completely naked at that point, but she did not know where his clothes were or how he got undressed in such a short timeframe. Dunbrack also could not explain how N.R.'s pants, passport, wallet, and cash all ended up in the front passenger seat of her car. Dunbrack further testified that she did not know how the small fire was started. According to Dunbrack, at one point when N.R. was lying on the ground, Rodriguez retrieved some items from the back seat of the car, including a gun. Rodriguez handed

---

[2] A subsequent search found no evidence of blood inside the vehicle.

[3] Officer Whartenby testified that he did not detect the smell of pepper spray on the victim or near the car when he arrived on the scene.

Dunbrack the gun and she hid it in her bra.  When the police arrived, Rodriguez ran and the officers placed Dunbrack under arrest.

C.

On December 13, 2016, prior to Dunbrack's testimony, the court held a charge conference.  At that time, Dunbrack's attorney generally asked, "Judge, what about lesser includeds?"  Although counsel did not mention theft, in response, the trial judge discussed a charge of theft as a lesser included offense of the robbery count.  The trial judge stated that based on the testimony thus far, there was no rational basis for adding theft as a lesser included offense to the jury charge.  Neither defense attorney objected or disputed the trial judge's statement.

On December 14, 2016, after Dunbrack testified, the court held another charge conference.  During the conference, Dunbrack's attorney made the following statements:

> Judge, I'm just wondering after hearing the testimony, it does appear that there could be justification here, use of force in defense of one's self and defense of others.  We heard testimony from Andrea Dunbrack that this individual was attempting what she believed to sexually assault her.  And she used whatever means she could with her feet or mace to, to essentially repel that attack, called out for him.  He clocked the guy in the head.
>
> And I'm just wondering if, if justification would be a charge that we should have the jury consider.  And

10

if we go there, could there also be the various levels of assault rather than an actual robbery. If in fact the jury didn't believe there was a robbery, but it could be, it could be an assault, second or third degree, even a simple assault if they thought that. And, and possibly a theft from a person or a theft in general if in fact there was some type of justification for the altercation and the assault.

But then Mr. Rodriguez is leaving the scene with the phone in his pocket. Was it an actual robbery, is it a theft. So I just wanted to throw that out there based on Ms. Dunbrack's testimony.

In response, the State opposed the inclusion of justification defenses to the jury instructions because the defense was required to provide notice of affirmative defenses and had not done so. The trial court thereafter engaged in a lengthy discussion with counsel focused solely on charging the justification defenses of self-defense and use of force in the protection of others. The State eventually conceded that charging the jury on the affirmative defenses was appropriate despite the lack of notice. The trial judge and counsel for the parties subsequently worked together on revising the newly agreed-upon additions to the jury charge. Dunbrack's attorney never mentioned a potential charge to lesser included offenses again.

The next morning, the trial judge asked if all parties had the opportunity to review the final jury charge and whether anyone had any comments or

11

revisions. The assistant prosecutor suggested one minor edit, and neither defense attorney indicated that they had any objection to the final jury charge.

During summation, in discussing the robbery charge, Rodriguez's attorney noted that the taking of property after a fight is not a robbery. Rodriguez's attorney did not specifically argue to the jury that what occurred was a theft, nor did he request that charge during any of the charge conferences. Dunbrack's attorney, who initially asked about a charge to lesser included offenses, focused his summation almost entirely on self-defense.

After summations, the trial court read the jury instructions, which included charges on justification -- self-defense and use of force in the protection of others -- as defenses to robbery and possession of a weapon for an unlawful purpose. Specifically, the judge explained that "[t]he State has the burden to prove to you beyond a reasonable doubt that the defense of self-defense is untrue." The judge further noted that if the State failed to satisfy its burden, then the jury "must allow the claim of self-defense and acquit the defendant." After concluding the instructions to the jury, the trial judge asked all counsel at sidebar, "[d]oes anybody have any objections to the charge?" All parties responded in the negative.

The jury returned guilty verdicts on all counts. On August 2, 2017, the court sentenced Rodriguez to an aggregate term of 16 years' imprisonment on

12

Counts I, II, III, and VI. That same day, the trial court sentenced Dunbrack to an aggregate term of 13 years' imprisonment on Counts I to IV.

D.

In an unpublished opinion, the Appellate Division reversed both defendants' convictions and remanded the matter for a new trial. Although defendants individually raised several arguments on appeal, the Appellate Division addressed only the claim that the trial judge erred in failing to charge the jury sua sponte on the lesser included offense of theft. On appeal, Rodriguez argued that a new trial was required because the trial court neglected to charge "theft as a lesser-included alternative to robbery when the testimony showed that theft might have been an afterthought after [the] fight was over." The Appellate Division held that the failure to charge theft was reversible error.

On November 12, 2019, we granted the State's petition for certification. 240 N.J. 139 (2019). We also granted the Attorney General's motion for leave to appear as amicus curiae.

II.

A.

The State argues that the Appellate Division incorrectly held that the trial court was obligated to charge the lesser included offense of theft sua

13

sponte. The State contends that there was no evidence presented to the jury that reasonably suggested that the theft of the victim's possessions occurred separate and apart from the assault. The State further argues that the Appellate Division erroneously dismissed the other counts of convictions which were unrelated to the robbery in Count I. The State asserts that any failure to include a theft charge as a lesser included offense to robbery did not impact the State's proofs or the jury's findings regarding the resisting arrest and weapons offenses. The State asks this Court to reinstate those convictions as well.

B.

Dunbrack agrees with the Appellate Division that the facts as presented by Dunbrack during her testimony clearly indicated that theft should have been charged as a lesser included offense. Dunbrack disputes the State's claim that theft can only be charged as a lesser included offense when there is a break in the chain of events originating with the robbery. Dunbrack further argues that the robbery charge was so intertwined with the remaining charges that reversal and remand of all counts was required. Specifically, Dunbrack claims that the theft charge, and conviction if found by the jury, would have defeated the possession of a weapon for an unlawful purpose count.

14

Rodriguez contends that Dunbrack's testimony supported the theory that the fight between Rodriguez and the victim was unrelated to the taking of the victim's phone. Rodriguez claims that Dunbrack's testimony showed that "the fight had nothing to do with the theft and that Rodriguez stole complainant's phone as an afterthought." Rodriguez asserts that although Dunbrack's counsel was polite in doing so, he did in fact request the theft charge during the charge conference, so the rational basis test, not the clearly indicated test, is warranted here. Accordingly, Rodriguez argues that the theft charge should have been given because there was a rational basis for the charge. Notwithstanding Rodriguez's position that the rational basis standard applies, he argues that the evidence nevertheless clearly indicated the theft charge, as held by the Appellate Division. Rodriguez echoes Dunbrack's argument that the Appellate Division correctly granted a new trial on the remaining counts.

C.

The Attorney General, appearing as amicus curiae, reiterates many of the State's arguments and asserts that the theft charge was not clearly indicated and did not "jump off the page" in light of the evidence presented at trial. The Attorney General additionally argues that the facts did not give rise to a factual basis to include theft as a lesser included offense even if the charge had been requested. The Attorney General contends that the Appellate Division's

15

decision will require theft to be charged in every robbery case. The Attorney General also asserts that a theft charge would nevertheless have prejudiced the defendants who were seeking outright acquittals based on self-defense and defense of others. Lastly, the Attorney General argues that under the plain error standard, there was overwhelming evidence of defendants' guilt, so the alleged error in charging is insufficient to raise a reasonable doubt as to whether it led to an unjust result.

### III.

### A.

When a defendant does not request an instruction or fails to object to its omission in the final jury charge, we review the omission of that instruction for plain error. State v. Funderburg, 225 N.J. 66, 79 (2016). The plain error standard requires a twofold determination: (1) whether there was error; and (2) whether that error was "clearly capable of producing an unjust result," R. 2:10-2; that is, whether there is "a reasonable doubt . . . as to whether the error led the jury to a result it otherwise might not have reached," Funderburg, 225 N.J. at 79 (omission in original) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). If both conditions are met, reversal is warranted. See State v. Walker, 203 N.J. 73, 89 (2010); R. 2:10-2.

16

B.

Under certain circumstances, it can be error for a trial court to fail to charge a lesser included offense sua sponte.

A trial court's determination of whether to include a charge to a lesser included offense is governed by statute. Pursuant to N.J.S.A. 2C:1-8(e), "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." On appeal, our review is guided by whether the charge was requested at trial. State v. Savage, 172 N.J. 374, 396-97 (2002) ("In assessing whether to charge the jury on a lesser included offense, our case law applies a different standard based on whether or not a charge was requested by a defendant at trial.").

When a defendant requests a charge to a lesser included offense, "the trial court is obligated . . . to examine the record thoroughly to determine if there is a rational basis in the evidence for finding that the defendant was not guilty of the higher offense charged but that the defendant was guilty of a lesser-included offense." State v. Sloane, 111 N.J. 293, 299 (1988). "The failure to instruct the jury on a lesser included offense that a defendant has requested and for which the evidence provides a rational basis warrants reversal of a defendant's conviction." Savage, 172 N.J. at 397-98.

17

If a defendant did not request a charge or did not object to the omission of a charge to a lesser included offense, instead of reviewing the record to determine if a rational basis existed, our appellate review assesses whether the record "clearly indicated" the charge, such that the trial court was obligated to give it sua sponte. State v. Denofa, 187 N.J. 24, 41-42 (2006). "An unrequested charge . . . must be given only where the facts in evidence 'clearly indicate' the appropriateness of that charge." Savage, 172 N.J. at 397.

In determining whether the facts in evidence clearly indicate that a charge should be given, the trial court is not required "to scour the statutes to determine if there are some uncharged offenses of which the defendant may be guilty." Sloane, 111 N.J. at 302. The trial court is also not saddled with the burden of sifting meticulously through the record to find "some combination of facts and inferences that might rationally sustain" the lesser included offense. State v. Choice, 98 N.J. 295, 299 (1985). "It is only when the facts 'clearly indicate' the appropriateness of that charge that the duty of the trial court arises." Ibid. We have explained that "the record clearly indicates a lesser-included charge . . . if the evidence is jumping off the page." Denofa, 187 N.J. at 42. In sum, our caselaw only requires a trial court to include a charge to a lesser offense that was not requested by the parties when that charge is obvious from the record.

Here, defendants focus on the trial court's failure to charge theft as an included offense.

This Court has explicitly held that "theft, by definition, is a lesser-included offense of robbery." State v. Ingram, 196 N.J. 23, 39 (2008). Indeed, the robbery statute describes robbery as an aggravated form of theft:

> A person is guilty of robbery if, in the course of committing a theft, he:
>
> > (1) Inflicts bodily injury or uses force upon another; or
> >
> > (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
> >
> > (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
>
> [N.J.S.A. 2C:15-1(a).]

A trial court should only instruct the jury on theft as a lesser included offense of robbery if "there is a question whether the defendant's act of 'inflict[ing] bodily injury,' 'us[ing] force upon another' or 'threat[ening] another with [or] purposely put[ting] him in fear of bodily injury' occurred 'in the course of committing a theft.'" State v. Harris, 357 N.J. Super. 532, 539

(App. Div. 2003) (alterations in original) (quoting State v. Jordan, 240 N.J. Super. 115, 119 (App. Div. 1990)).

This Court considered whether theft as a lesser included offense to robbery should have been charged to the jury in State v. Cassady, 198 N.J. 165 (2009). In Cassady, the defendant was charged with armed robbery of a bank. 198 N.J. at 169. At trial, a bank teller testified that the defendant approached her counter and passed a note requesting money. Id. at 170. When the bank teller did not comply, the defendant raised his voice and jumped over the bulletproof glass window separating the tellers from the customers. Ibid. The teller testified that she was "so scared [she] thought he would kill [her]." Ibid.

At the end of trial, the defendant requested that theft be charged as a lesser included offense to robbery. Id. at 172. The defendant argued that he did not threaten or inflict harm upon the teller during the robbery, so a theft charge was appropriate. Ibid. The trial court denied his request and found the defendant's assertion that the teller was not threatened under the facts of the case "absolutely ludicrous." Ibid. The jury convicted the defendant on all counts, including robbery of the bank teller. Id. at 173.

On appeal, the Appellate Division reversed the defendant's robbery conviction in a split decision. State v. Cassady, 396 N.J. Super. 392, 399, 402 (App. Div. 2007). The majority found that the trial court's denial of the

20

defendant's request to charge theft was error because the facts provided a rational basis for the jury to acquit on robbery and convict on theft.  Id. at 399.  The dissenting judge disagreed and expressed the view that no rational jury could conclude that the offense in question was anything other than a bank robbery.  Id. at 405 (Fuentes, J.A.D., dissenting).

This Court reversed.  Cassady, 198 N.J. at 169.  We held that the trial court properly assessed the evidence in determining that no rational basis existed for charging theft.  Id. at 178-79.  Quoting the Appellate Division dissent, we found that the facts were clear and unequivocal that "'[t]his was a bank robbery:  plain and simple [and] no rational jury could come to any other conclusion.'"  Id. at 179 (quoting Cassady, 396 N.J. Super. at 405).

IV.

A.

Turning to the facts of this case, the record requires us to review this matter for plain error using the clearly indicated standard because defense counsel did not explicitly request the theft charge.

It is undisputed that at the conclusion of all the charge conferences, summations, and the reading of the charge to the jury, both defense attorneys advised the court that they had no objections to the final jury charge.  During the charge conference on December 13, 2016, prior to Dunbrack's testimony,

21

Dunbrack's counsel asked the trial judge, "what about lesser includeds?" but did not specifically request a theft charge. In response, the trial judge advised that, based on the evidence adduced at trial to that point, there was no rational basis for a lesser included charge of theft. Neither of the defense attorneys made any further statements or requests regarding lesser included offenses at that time.

The next day, after Dunbrack's testimony, Dunbrack's attorney advised the court that he "was wondering" whether "there could be justification here, use of force in defense of one's self and defense of others." Dunbrack's counsel, as noted above, then raised the potential applicability of "the various levels of assault" before adding, "[a]nd, and possibly a theft from a person or a theft in general if in fact there was some type of justification for the altercation and the assault." Counsel then asked rhetorically, regarding Rodriguez's departure with the phone, "[w]as it an actual robbery, is it a theft[?]" and noted that he "just wanted to throw that out there based on Ms. Dunbrack's testimony."

Given that the focus of counsel's statement was on the justification defenses, after his comments, the conversation shifted entirely to a discussion of those defenses. After successfully arguing for the inclusion of the affirmative defenses in the jury charge, Dunbrack's counsel never again

22

mentioned the possibility of a lesser included theft charge. And Rodriguez's counsel neither requested nor suggested that theft should be charged during any of the charge conferences.

We do not agree with defendants that this dialog reflects a request for a charge to theft. Dunbrack's counsel's pondering or "throwing out there" the possibility of several charges can hardly be interpreted as a request for a jury instruction. In addition to his mention of the theft charge, defense counsel also mentioned "various levels of assault" and even "simple assault," but he did not make an explicit request that such offenses be charged.[4] Dunbrack concedes that trial counsel was "inartful" during the charge conference when he raised lesser included offenses. Rodriguez notes that trial counsel was being "polite" in making the request. Whether trial counsel's statements are viewed as "polite" or "inartful," they were surely not direct in requesting the charge.

It should not be incumbent upon the trial judge to sift through the trial transcript to decipher whether musings of counsel at any given point throughout the trial could be interpreted as a request for a jury charge. The importance of requiring a clear request from counsel, moreover, is underscored by considerations of trial strategy. After the trial court granted counsel's request for jury charges to self-defense and use of force in the protection of

---

[4]  Assault was not one of the offenses charged in the indictment.

23

others, the jury was aware that they had the ability to acquit the defendants if they believed Dunbrack's version of events. The inclusion of the lesser included theft charge, however, would have presented the jury with an alternate theory of culpability aside from outright acquittal. Having secured jury instructions to affirmative defenses, defense counsel could have made the strategic choice to argue for acquittal, as opposed to a lesser charge -- a choice that a sua sponte instruction by the trial court could have thwarted.

It is not for this Court to speculate. The fact remains that defense counsel simply did not request the theft charge. And because counsel did not request the lesser included charge of theft, the applicable standard here is whether the lesser included offense of theft was clearly indicated from the facts presented at trial.

B.

Having established the proper standard, we must determine whether the facts of this case jumped off the page such that the trial judge should have given the theft charge sua sponte. As detailed at length above, police arrived on the scene to find the victim on the ground, verbally unresponsive, in the fetal position, naked, bloodied, and burned by a small fire still ablaze nearby. His clothes were strewn about on the ground and on the front passenger seat of Dunbrack's car, along with his passport, wallet, and money. A gun stained

with the victim's blood lay on the driver's seat, and police later retrieved another gun on Dunbrack's person when they searched her. Rodriguez fled as police approached and police later arrested him with the victim's cell phone in his pocket. The victim testified that he thought defendants were going to kill him and that he feared for his life. Those facts, quite frankly, do not jump off the page as the basis for a charge of theft. And for the reasons we will discuss, even Dunbrack's version of events do not support that charge.

Similar to Cassady, it is hard to consider the facts in this case -- as presented by either side -- as obviously indicating that a theft, as opposed to robbery, might have occurred. The idea that the facts of this case "jump off the page" as theft and therefore required the trial court to sua sponte charge theft as a lesser included offense is as implausible as the parallel argument found "absolutely ludicrous" in Cassady, 198 N.J. at 172. For a theft charge to jump off the page, it would require the facts here to somehow support a finding that the victim was not threatened in any way and was not in fear of his life during the course of the taking of his belongings. The trial court was not obligated to sift through the record to formulate a scenario in which the defendants' act of inflicting bodily injury on N.R. occurred separate and apart from defendants stealing N.R.'s belongings.

25

In summation, counsel for Rodriguez argued, without specifically mentioning the case, that this matter is similar to defendant's claim in State v. Lopez, 187 N.J. 91 (2006), that the violence and the assault occurred separate and apart from the theft. Defense counsel stated:

> [T]he items that [N.R.] said he left on the seat, [Rodriguez] goes over to them. He picks up some of the items. You can infer that he picked up the cell phone then, ladies and gentlemen, but I suggest to you that that's not a robbery.
>
> And the [j]udge will instruct you on the law and you go by the instructions on the law. But I suggest to you that's not a robbery, ladies and gentlemen. That is the same as two people get into an altercation. After the fight, when it's over, somebody walks away. Somebody's knocked out. However, after the fight if somebody's chain is broken and it's on the ground, and the other person picks it up or their phone, and they don't see it, and they pick it up, that may be something that's not appropriate, but that's not a robbery.

In Lopez, we held that "where a violent fracas occurs for reasons other than theft, and the perpetrator later happens to take property from the victim," the perpetrator might be guilty of assault and theft "but not of robbery" because "the violence and the theft are unconnected." Lopez, 187 N.J. at 101.

Rodriguez argues that the victim's phone, which was in his pocket at the time of his arrest, is indicative of a theft that occurred after the violence. But that completely ignores the evidence of everything else that was taken from the

26

victim as both defendants stood by as he lay on the ground naked and bloodied. And Dunbrack's testimony certainly did not make the argument that the theft and violence were unconnected. Although she testified that N.R. attempted to sexually assault her, leading to a fight between N.R. and Rodriguez, she claimed she was completely unaware of the theft of N.R.'s phone, passport, wallet, and money. Dunbrack was unable to explain how N.R.'s possessions ended up in the front passenger seat of her car or how he came to be completely undressed. She did not provide any insight into the circumstances of the theft or how the fire was started. Nothing in Dunbrack's version of the events "jumps off the page" as indicative of theft. Neither Dunbrack nor Rodriguez requested an instruction on theft, and the trial court was not required to scour the record for a combination of facts to justify giving such a lesser-included jury charge.

The trial court did, however, instruct the jury on self-defense and use of force in the protection of others, as a result of Dunbrack's testimony. If the jury believed Dunbrack's version of events, they were armed with the ability to acquit her and Rodriguez of the most serious charges. The jury, however, declined to do so.

The jury determined that this was an armed robbery. If this case -- in which a victim's belongings were taken and he was found beaten, bloodied,

and lying naked on the ground in the fetal position -- is representative of one in which a lesser included theft charge "jumps off the page," then it is hard to imagine any robbery case that would not require such a charge.

In sum, we find no error in the trial court's omission of a theft charge, let alone plain error.

V.

For those reasons, we reverse the judgment of the Appellate Division and reinstate defendants' convictions. We remand the matter to the Appellate Division so that it may address the remaining issues on appeal.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.